# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RANDELL DALE PRATT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-10-0660-HE |
| | ) | |
| THE GEO GROUP, INC., a Florida | ) | |
| Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Randell Dale Pratt filed this professional negligence action against the GEO Group, Inc. ("GEO"). He claims he was injured due to inadequate medical care he received while incarcerated at the Lawton Correctional Facility ("LCF"), a private prison operated by GEO. Defendant has moved for summary judgment, contending that plaintiff failed to exhaust his administrative remedies and failed to file this action within the applicable limitations period.

Summary judgment, is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As the material facts are undisputed,[1] defendant's motion presents only matters of law for the court to decide.

## Background

---

[1] *The determinative issue here is the date upon which plaintiff's tuberculosis was diagnosed, i.e. the date upon which he knew or should have known of the alleged breach of duty by defendant. Both parties' submissions reflect this date was in September, 2008.*

Plaintiff had a positive reaction to a tuberculosis skin test while he was incarcerated at the Lexington Assessment and Reception Center ("LARC"). His chest x-ray at that time was negative, indicating he did not have active tuberculosis. Plaintiff was advised by Oklahoma Department of Correction ("DOC") medical personnel at LARC that because of the positive TB skin test he would need to be placed on a precautionary regimen of anti-tuberculosis medications to prevent any further problems with the disease. DOC medical personnel told plaintiff he would be receiving preventive medication when he arrived at defendant's facility. When he was transferred to LCF plaintiff informed GEO medical officials of his positive skin test and the statements by DOC personnel that he would receive preventive medication for tuberculosis. However, GEO medical personnel did not administer any tuberculosis medication to plaintiff, representing to him that because his chest x-ray was negative, medication was unnecessary.

Plaintiff's latent tuberculosis became active and he developed Pott's disease. He learned he had active tuberculosis when he was admitted to the University of Oklahoma Medical Center in September 2008. Plaintiff filed this lawsuit alleging medical negligence on June 25, 2010.

## Analysis

Defendant asserts that plaintiff's claim is barred by the one year statute of limitations set by 12 Okla. Stat. § 95(11).[2] It asserts that, although plaintiff was diagnosed with

---

[2]*As the court concludes plaintiff's claim is time-barred, it is unnecessary to determine whether, as defendant urges, plaintiff failed to exhaust his administrative remedies.*

tuberculosis in September, 2008, he waited over a year to file this action.

Plaintiff does not dispute that he was diagnosed in September, 2008, nor does he dispute the proposition that, if the one year limitations period applies, his claim is untimely. Rather, he contends that § 95(11) is unconstitutional as a "special law" that violates Art. V, Section 46 of the Oklahoma Constitution.[3] Plaintiff asserts the statute is illegal because it makes it "more difficult for inmates to seek redress in the courts than for other persons in the class of those who bring tort claims for medical negligence." Plaintiff's response, p. 11.

The challenged statute, 12 Okla. Stat § 95(11), provides the limitations period for all actions filed by inmates.[4] Because it establishes a one year deadline, prisoners have only a year to sue for medical negligence, while non-prisoners have two years. 12 Okla. Stat. § 95(11); 76 Okla. Stat. § 18. The question is whether, as plaintiff contends, § 95(11) is a prohibited "special statute" because it splits the class of those injured by medical negligence into two categories – those injured outside a prison and those injured within.

In <u>Ponca Iron & Metal, Inc. v. Wilkinson and the Workers' Compensation Court</u>, 242 P.3d 534 (Okla. 2010), cited by plaintiff, the Oklahoma Supreme Court explained that "[t]he Legislature runs afoul of the prohibition on enacting special laws set forth in Oklahoma

---

[3]*Plaintiff asks the court to certify the question of the constitutionality of 12 Okla. Stat. §95(11) to the Oklahoma Supreme Court. Certification is appropriate where the legal question is novel and applicable state law is unsettled. However, Oklahoma courts have considered the impact of Art. 5 § 46 in cases that are similar enough to allow the court to determine whether § 95(11) is a prohibited "special law."*

[4]*The limitations period also applies to lawsuits filed by former prisoners that are "based upon facts that occurred while the person was an inmate in the custody" of the State of Oklahoma, a contractor with the State, or a political subdivision of the State. 12 Okla. Stat. § 95(11).*

Const. Art.V § 46 when it adopts a classification that is arbitrary and capricious and bears no reasonable relationship to the object of the Legislation." *Id.* at 536. Recognizing that that the state legislature has a wide latitude to create reasonable statutory classifications, the Oklahoma court stated that "[t]he terms of art. 5, § 46 command that court procedure be symmetrical and apply equally across the board for an entire class of similarly situated persons or things." *Id.* (quoting Zeier v. Zimmer, Inc., 152 P.3d 861, 868 (Okla. 2006). The court concluded the classification at issue in that case, which distinguished between injured employees on the basis of continued versus terminated employment, was a "false and deficient classification of the larger class of injured employees because it creates preference for members in the continued employment group and results in unequal treatment for certain members of the terminated group that bear no reasonable relationship to curtailing retaliatory claims or preventing stale claims." *Id.*

The Oklahoma Supreme Court reached the opposite conclusion regarding a statutory classification in Glasco v. State *ex rel* Okla. Dep't of Corr.. 188 P.3d 177 (Okla. 2008). There the court rejected a challenge to a statute which withheld a remedy from an injured state worker afforded to other injured (private sector) employees. Noting that the plaintiff did not argue that the class of "state employees" lacked any distinctive characteristic upon which different treatment could reasonably be founded, the court concluded the statute satisfied the requirements of the Article V § 46 of the Oklahoma Constitution as it "facially treats alike all members of the class of state employees on leave without pay." *Id.* at 186.

The critical issue thus becomes whether the legislative classification involved here is

4

reasonable or not — whether persons like plaintiff who are subject to the one year statute are in fact "similarly situated" to those to whom the two year statute applies. As the Zeier court stated, 152 P.3d at 867:

> In a special laws attack under art. 5, § 46, the only issue to be resolved is whether a statute upon a subject enumerated in the constitutional provision targets for different treatment less than an entire class of similarly situated persons or things.

As applicable here,[5] the question is whether persons who assert claims based on events occurring while they were an inmate in custody are similarly situated with the public generally.

The court concludes they are not. Plaintiff does not argue that the class created by §95(11) "has no distinctive characteristic upon which different treatment may be reasonably founded." Glasco, 188 P.3d at 185. It seems obvious that inmates as a class do have certain distinctive characteristics. Plaintiff also does not discuss the purpose of § 95(11) or whether it is furthered by the legislative classification.

Persons do not entirely lose their constitutional rights just because they are incarcerated, but that status does impact their rights in a variety of ways consistent with the penal purposes of their incarceration. *See generally* Boles v. Neet, 486 F.3d 1177,1180 (10th Cir. 2007) (court noted that "delicate balance ... has been recognized between prisoners' constitutional guarantees and the legitimate concerns of prison administrators" and

---

[5]*There appears to be no dispute that the statute at issue here involves a subject that is one of those "enumerated" in Art. V, § 46 — the "limitation of civil or criminal actions — and is hence one of the subjects to which the prohibition on special laws potentially applies.*

5

that prisoners' constitutional rights may be limited by restrictions which are reasonably related to legitimate penological concerns). Here, while the absence of specific legislative history makes analysis of the legislature's intent more difficult, several explanations for the selection of a shorter limitations period for inmate claims seem likely. The legislature appears to have been motivated by a particular concern with frivolous suits from inmates and has enacted various statutes directed to that issue. *See* 57 Okla. Stat. §§ 566 and 566.4, both addressing, among other things, frivolous filings by inmates.

That is not an unreasonable concern and has been the motivating purpose behind similar federal requirements directed to prisoners. *See e.g.,* 28 U.S.C. § 2244(b) (restrictions placed on an inmate's ability to file a second or successive § 2254 habeas petition). A shorter limitations period directed to a class of persons with a history suggesting a greater risk of frivolous suits is not obviously unreasonable. Further, as plaintiff's motion also notes, the legislature has imposed requirements on inmates that they exhaust internal administrative remedies before filing suit in court, 57 Okla. Stat. § 564, suggesting a concern both with weeding out frivolous claims and with resolving inmate grievances or disputes as rapidly and efficiently as possible. Both concerns have particular force where inmate claims are concerned and the legislature's apparent conclusion is consistent with similar actions taken by Congress. *See e.g.,* 28 U.S.C. § 1915A (screening complaints in which a "prisoner seeks redress from a governmental entity or officer or employee of a governmental entity"). In short, inmate suits present issues and concerns not present, or present to the same extent, with claims asserted by the public at large. As such, plaintiffs asserting suits based on facts

occurring while in custody are not "similarly situated" with other potential plaintiffs.

Although it addressed a different statute, the Oklahoma Court of Civil Appeals has reached essentially that conclusion in the context of an Art. V, §46 challenge. In <u>Burnett v. Middleton</u>, 246 P.3d 464 (Okla.Civ.App. 2010), the court rejected a "special laws" challenge to 57 Okla. Stat. § 566.4K, which imposes certain special procedures for inmate suits.[6] It concluded the statute did "not target for different treatment less than the entire class of similarly situated persons or things" and "applie[d] equally to the entire class of those who sue an incarceration facility or its employees for alleged harm caused the person while confined." *Id.* at 466. It "deem[ed] §566.4's classification of persons sharing the same circumstances to be reasonable and justified." *Id.* The case at least tacitly recognizes that, as to the circumstances and considerations which relate to filing suits, inmates are not similarly situated with the public at large.

The court concludes the classification involved here bears a reasonable relationship to what appears to have been the legislation's legitimate purpose – to discourage frivolous lawsuits and encourage the prompt resolution of disputes arising in an institutional setting. It is not unreasonable and does not run afoul of Okla. Const. art. V, § 46.

The classification also does not violate Okla. Const. art.V, § 59. Plaintiff makes a blanket assertion that the one year statute of limitations violates § 59 of Article V, in addition

---

[6]*Among other things, the statute authorizes a stay of proceedings while a special report akin to a federal <u>Martinez</u> report is prepared.*

7

to § 46.[7] However, he fails to support his contention with any analysis or legal authority and case law is to the contrary. See Glasco, 188 P.3d at 186.

Plaintiff did not file this action within a year of discovering he had active tuberculosis. While the court is not without sympathy for plaintiff in the circumstances he describes, he missed a valid, statutory deadline. Accordingly, defendant's motion for summary is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 19th day of July, 2011.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[7]*Article V § 59 of the Oklahoma Constitution provides that "[l]aws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted."*